IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
21st JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| DAVID R., II and LISA K PORTHOUSE, a married couple, | |
| PLAINTIFFS, | |
| vs. | |
| TIMOTHY A. McCREERY,<br>Serve at: 18 Squires Lane<br>St. Louis, MO 63131, | Cause #: _____ |
| and | Division #: _____ |
| PAULA J. McCREERY,<br>Serve at: 18 Squires Lane<br>St. Louis, MO 63131, | |
| and | |
| GREATER METRO, INC., d/b/a<br>PRUDENTIAL ALLIANCE REALTORS,<br>Serve at: 17050 Baxter Road<br>Suite 200<br>Chesterfield, MO 63005, | **JURY TRIAL REQUESTED** |
| and | |
| MICHAEL F. NIEMANN, PERSONAL<br>REPRESENTATIVE OF THE<br>ESTATE OF TINA L. NIEMANN,<br>Serve at: 4 Adams Lane<br>Kirkwood, MO 63122, | |
| DEFENDANTS. | |

## PETITION

## *PREAMBLE*

*This matter was previously filed in the Circuit Court of St. Louis County, Missouri, bearing Cause #: 13SL-CC03257, and was dismissed, without prejudice, on or about June 23, 2014. If and where applicable, this cause of action is subject to the Missouri Savings Statute.*

COME NOW PLAINTIFFS, David and Lisa Porthouse (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned counsel, and bring the following causes of action against Defendants Timothy and Paula McCreery (hereinafter collectively referred to as "McCreery Defendants") and Defendants Greater Metro, Inc., d/b/a Prudential Alliance, Realtors, and Michael F. Niemann, Personal Representative of the Estate of Tina L. Niemann (hereinafter referred to as "Prudential Defendants"):

## ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiffs are husband and wife and citizens of the State of Missouri, and reside in St. Louis County, Missouri.

2.      The McCreery Defendants are husband and wife and citizens of the State of Missouri, and reside in St. Louis County, Missouri.

3.      Defendant Greater Metro, Inc. is a Missouri corporation with its principal place of business in St. Louis County, Missouri. During the years 2011 through 2013, inclusive, it operated under the fictitious name "Prudential Alliance Realtors". The corporation operated by and through its agents, servants, and employees and who were at all times herein mentioned, acting within the course and scope of their employment

and whose acts have been ratified by the Defendant.

4.  Tina L. Niemann was a licensed real estate agent, and who also was the agent, servant, and employee of Prudential Alliance Realtors during the period, January, 2011 through April, 2013, inclusive.

5.  Hereinafter, Defendants Niemann and Prudential Reliance Relators will be referred to as the "Prudential Defendants".

6.  The McCreery Defendants owned the single-family residential real estate, more commonly known and numbered as 104 West Swon Avenue in the City of Webster Groves, State of Missouri (hereinafter referred to as the "Property") from 1996 through March 19, 2013.

7.  The McCreery Defendants engaged the Prudential Defendants to sell the Property in early 2011.  They prepared a handwritten Seller's Disclosure Statement for distribution to potential buyers, dated March 1, 2011 (hereinafter the "Seller's Disclosure to Wagners").

8.  During December, 2011 and January, 2012, the McCreery Defendants negotiated a sale and two-year lease of the Property with Robert and Dinah Wagner (hereinafter referred to as the "Wagners"). The negotiations culminated in a Residential Sale Contract with a Lease-Purchase Rider and a Residential Lease, dated January 2, 2012.  The Contract and Lease appear on forms provided by the St. Louis Association of Realtors and the Lease-Purchase Rider appears on a form approved by "Counsel, Prudential Alliance Realtors."

9.  The Wagners took possession of the Property in February, 2012.  In early May, 2012, they vacated the Property claiming that it was uninhabitable.  The Wagners

informed the McCreery Defendants of "safety and environmental problems", in writing, prior to May 11, 2012.

10. The McCreery Defendants began consulting attorneys by May 9th and stated in writing on May 10th that "we will be forced to handle this with attorneys" if the Wagners did not accept a settlement proposed by the McCreery Defendants. The Wagners did not accept the proposed settlement at that time.

11. The McCreery Defendants filled out a handwritten Seller's Disclosure Statement, dated May 16, 2012 for distribution to potential future purchasers of the Property. In answer to the question "Are you aware of any [e]xisting or threatened legal action affecting the property?", the McCreery Defendants checked the box indicating "No". In answer to the question "Are you aware of the presence of asbestos materials on the property, such as roof shingles, siding, insulation, ceiling, flooring, pipe wrap, etc.?", the McCreery Defendants checked the box indicating "No." The McCreery Defendants did not answer the questions: "Are you aware of the presence of any mold on the property?"; and "Are you aware of anything with mold on the property that has ever been covered or removed?"

12. On June 26, 2012, the McCreery Defendants filed suit against the Wagners alleging breach of contract. The first numbered paragraph of their Petition identifies the Property at issue in this Petition.

13. As part of counterclaims and affirmative defenses filed in the Circuit Court of the County of St. Louis in response to the McCreery Defendants' legal actions, the Wagners alleged that, inter alia, "upon taking possession of the property, [they] became aware of dangerous conditions at the premises that materially impacted the

life, health and safety of the [Wagners], including, but not limited to, the fact that issues existed with [the] structural integrity of the premises", that the sales contract and lease were "procured by fraud", that "asbestos was present and exposed" and that "there was the unhealthy presence of mold in the Property". They further alleged that the McCreery Defendants "concealed and failed to disclose" those conditions.

14. The McCreery's deliberately, and with the intent to misrepresent and to defraud Plaintiffs, failed to disclose the existence of the lawsuit, the alleged existence of asbestos, the alleged existence of mold, and the structural defects, all of which rendered the Property both dangerous and uninhabitable. Had the McCreery and Prudential Defendants disclosed the existence of the legal actions, Plaintiffs would have been able to investigate the claims of the suit and the countersuit.

15. But for the deliberate, intentional withholding of information that was required to be disclosed, Plaintiffs would have had the opportunity to investigate the Wagners' claims. More specifically, contact with the Wagners would have disclosed other serious defects affecting the value and habitability of the Property which had not be specifically identified by Mrs. Wagner as part of her pleadings in Cause No 12SL-CC02431 in the St. Louis County Court, MO.

16. As part of the Prudential Defendants' renewed efforts to sell the Property after the Wagners vacated the Property, they staged "open house" events inviting prospective purchasers to view the Property.

17. Robert Wagner attended at least one of the open house events and spoke with Tina L. Niemann. He described the issues he had discovered while residing in the Property and disclosed to her the legal actions between the McCreery Defendants and

the Wagners.

18. The legal action was described to at least one other representative of Prudential Advantage Realtors at an open house event.

19. Therefore, the Prudential Defendants had actual knowledge that the disclosures provided to Plaintiffs were not only different from those provided to the Wagners, but were, in fact, false.

20. Plaintiffs expressed an interest in the Property in December, 2012. The Prudential Defendants provided to Plaintiffs a Seller's Disclosure Statement signed by the McCreery Defendants (hereinafter the "Seller's Disclosure to Porthouse") in which the McCreery Defendants represented that they were not aware of any existing or threatened legal action affecting the Property.

21. The Seller's Disclosure to Porthouse deliberately and intentionally misrepresented the facts including, but not limited to the existence of litigation and allegations of multiple defects that should have been disclosed.

22. Plaintiffs purchased the Property on March 19, 2012. At no time prior to the purchase were they provided with a truthful and accurate Seller's Disclosure Statement, nor were Plaintiffs informed in any other manner that there was an ongoing legal action in which the condition of the Property was at issue; nor was there any disclosure of the alleged presence of asbestos, mold, and structural defects as aforesaid.

23. Plaintiffs currently reside in the Property with their two minor children.

24. On or about April 13, 2013, the dining room ceiling began to collapse into the room below. This revealed undisclosed structural damage and previous attempted repairs to the joists supporting the floor above, the wall above that floor, the floor above

that floor, and ultimately the roof of the house.

25. Cause No. 12SL-CC02431 in the St. Louis County Court was still pending, even after Plaintiffs closed on the Property.

26. Plaintiffs were first informed of the legal action in May, 2013.

27. Tina L. Niemann passed away on June 14, 2013.  Michael Niemann was appointed as Personal Representative. Her Estate is in the Probate Division of the Circuit Court of St. Louis County, Missouri.

### COUNT I
### MISSOURI MERCHANDISING PRACTICES ACT

28. Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs of their Petition, as if the same were full set forth herein.

29. The McCreery Defendants made numerous false statements and deliberate omissions of facts in their Seller's Disclosure to the Porthouses, as well as other false and/or deliberately misleading statements and/or disclosures in documents, statements, and correspondence.

30. The statements and omissions alleged in paragraph 29 individually, and/or collectively, constituted facts that a reasonable consumer would likely consider to be important in making a purchasing decision.

31. The Prudential Defendants knew, or would have known, upon reasonable inquiry, that there were false statements and deliberate omissions and misrepresentations of facts in the Seller's Disclosure to the Porthouses, as well as other documents they provided to Plaintiffs prior to their purchase of the Property.

32. Upon information and belief, the Prudential Defendants failed and

omitted to fully investigate the allegations of the Wagners regarding both the lawsuit and the serious defects in the Property; and instead, relied upon the representations of the McCreery Defendants.

33. The false statements, deliberate misrepresentations and omissions by the McCreery Defendants, as aforesaid, individually and/or collectively, constituted facts that a reasonable consumer would likely consider to be important in making a purchasing decision.

34. The McCreery Defendants intended that Plaintiffs rely upon all those misrepresentations and omissions.

35. Plaintiffs purchased the real estate (the Property located at 104 West Swon Avenue) for personal, family, and household purposes.  Plaintiffs currently reside on the Property.

36. Plaintiffs have suffered an ascertainable loss of money and/or property. Specifically including, but not limited to, the following:  the contract price at the time of purchase paid by Plaintiffs reflected the represented value of the Property that grossly exceeded the actual market value of the Property.  Plaintiffs have borne the cost of emergency structural and plumbing repairs.  Significant further repairs and abatement of undisclosed conditions will be necessary to the Property. Plaintiffs have incurred attorney fees and expenses in order to preserve their rights, and will continue to do so in the future.

37. Plaintiffs' ability to either sell and/or repair the Property has been completely impaired by their knowledge of the defects and they cannot afford to expend potentially hundreds of thousands of dollars in repairs necessary to put the Property

back on the market.  In its present condition, the Property has no market value other than to a speculator. Moreover, it is unlikely that any speculator would purchase the Property due to the amount of the mortgage.  In the Property's present condition, the mortgage is underwater.

38.    Plaintiffs' loss was a result of a direct and deliberate violation of §407.020 R.S.Mo., including, but not limited to, intentional deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of material facts in connection with the sale and advertisement of real estate, as set forth above.

39.    By engaging in such conduct, the McCreery Defendants and the Prudential Defendants showed reckless indifference to or conscious disregard for the rights of Plaintiffs such that exemplary damages are appropriate and thereby further entitle Plaintiffs to an award of exemplary damages.

WHEREFORE, Plaintiffs pray this Court enter joint and several judgment against the McCreery Defendants and the Prudential Defendants and enter either:

[1] an order for recission of the Property purchase, that all monies spent by Plaintiffs in performance of the contract and improving the Property be returned to them, and for all incidental and consequential damages incurred by Plaintiffs including, but not limited to, mortgage payments, real estate tax payments, homeowner's insurance payments, utility payments, and legal fees, among others; or

[2] a judgment for the difference in the value between the Property, as represented, and the actual value of the Property, and for payment of actual damages and expenses that will fairly and reasonably compensate Plaintiffs.

In addition to the relief request above, Plaintiffs pray for a judgment for attorney's fees allowable by statute, for punitive damages allowable by statute in an amount sufficient to punish Defendants and deter others from like conduct, for equitable relief as the Court deems necessary or proper, and for such other and further relief as the Court deems just and proper in the premises.

## COUNT II
## MISREPRESENTATION

COME NOW PLAINTIFFS and for their separate cause of actions against the McCreery Defendants and re-allege and incorporate by reference each and every allegation contained in COUNT I of Plaintiffs' Petition, as though the same were fully set forth herein

40. The representations made by Defendant McCreerys were material to Plaintiffs' decision to continue the process to purchase the Property. Plaintiffs relied upon those representations and borrowed money to mortgage the Property and, ultimately, as aforesaid, purchased the Property.

41. The aforesaid representations made by the McCreery Defendants were false and at the time they were made, they were made with knowledge of the falsity or without knowing one way or another that the statement was true or false; but was, nevertheless, made by the McCreerys with the intent that Plaintiffs rely upon those representations.

42. Plaintiffs did rely upon those deliberate and false misrepresentations and became indebted to their mortgager and completed the purchase of the Property.

43.     The conduct of the McCreery Defendants was done with a conscious disregard for the rights, safety and interests of Plaintiffs.  Under the law, the conduct of the McCreery Defendants amounted to conduct evidencing an evil motive, entitling Plaintiffs to an award of punitive damages against the McCreery Defendants for their conduct in making a misrepresentation to Plaintiffs.

WHEREFORE, Plaintiffs state that they has sustained damages in excess of $30,000, and pray judgment against the McCreery Defendants for the damages Plaintiffs have sustained and are reasonably certain to sustain in the future, plus punitive damages, as aforesaid, plus interest and their costs in this behalf expended; and for such other and further relief as the Court deems just and proper in the premises.

## COUNT III
## NEGLIGENCE PER SE

44.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of their Petition, as if the same were fully set forth herein.

45.     During the entire period that the McCreery Defendants owned the Property, the City of Webster Groves (hereinafter referred to as the "City") enforced a building code that contained a requirement that most building work be performed by licensed contractors under a permit issued by the City.  The building code requires that permitted work be inspected by the City Building Department.  If any work is performed without a permit, the building code provides that the City may require the work to be removed.  The building code does not require that all elements of a building meet current building standards; however, it requires contractors (and homeowners

acting as their own contractors) to bring all affected elements into compliance with the current code if they are disturbed in the course of permitted work.  Any failure to comply with the building code by performing work governed by the building code is defined as an ongoing violation unless and until a permit is properly issued and the work is inspected to confirm it fully complies with the building code.

46. At some point during the period the McCreery Defendants owned the Property, they received a permit to renovate one or more bathrooms on the second floor of the Property.

47. The permit the McCreery Defendants requested did not disclose any proposed structural, electrical, or plumbing modifications.  It was limited to adjustments to, and replacement of, fixtures.

48. At some point during his ownership of the Property, Timothy McCreery took and passed an examination on the relevant portions of the building code of the City in order to do work without hiring a contractor licensed to operate in the City.

49. Although the City building code allows homeowners to perform virtually all residential construction and renovation work, all structural changes must be made upon submitted plans that were certified by a licensed Missouri professional engineer or architect.

50. Timothy McCreery did not submit plans certified by a licensed Missouri professional engineer or architect before making structural alterations to the pre-existing bathrooms on the western side of the Property.

51. In the course of his renovations, Timothy McCreery decided to remove structural elements of the floor, including a concrete slab that had provided rigidity to

the floor joists and the ceiling below.  He cut into existing floor joists in order to make room for new or relocated sewage pipes.

52. Timothy McCreery attempted to remedy the issues he created, by adding patches to a portion of the sides of existing weakened joists.  He cut and removed a gas supply line without capping the line.  He disconnected existing electrical wiring and reconnected it with electrical tape without making the connection in an approved electrical box.

53. The structural, gas plumbing, and electrical modifications Timothy McCreery made did not comply with the then-current building code.

54. Timothy McCreery covered his misdeeds with plywood subfloor and tile.  The modifications were not discovered or discoverable by Plaintiffs by ordinary means.

55. The Plaintiffs did not, in fact, discover the structural modifications prior to purchasing the Property.

56. The modifications are unsafe and required emergency stabilization once discovered by Plaintiffs.

57. After the Wagners vacated the Property, the McCreery Defendants made repairs to the radiator system, including replacing pipes and valves.  These repairs were made without a permit.  The work was not subjected to formal inspection by the City.

58. The City requires a building permit for replacement of pipes and valves in radiant heating systems.  The City also requires inspections to verify the safety of completed repairs.

59. The actions of the McCreery Defendants constitute violations of the building code of the City of Webster Groves.

60. As residents and owners of the Property, the Plaintiffs are within the class of persons these ordinances are designed to protect.

61. Plaintiffs have suffered and continue to suffer injuries of a type that these ordinances are designed to prevent.

62. As a direct and proximate result of the ordinance violations by the McCreery Defendants, Plaintiffs have been injured in that they spent money to purchase the house that has a lesser actual value and have since been required to spend monies for incidental and consequential damages. Defendant Lisa Porthouse has sustained physical injury.

63. The McCreery Defendants knew, or should have known, that their actions or omissions were in violation of the ordinance and would result in injury to Plaintiffs or any other subsequent purchaser of the Property.

64. By engaging in such conduct, the McCreery Defendants showed reckless indifference to or conscious disregard for the rights of Plaintiffs such that exemplary damages are appropriate and thereby further entitle Plaintiffs to an award of exemplary damages.

65. The actions by the McCreery Defendants were extreme and outrageous conduct that intentionally or recklessly caused the severe emotional distress as herein alleged. Such emotional distress was a foreseeable result of the actions alleged in this COUNT, in that the McCreery Defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress.

WHEREFORE, Plaintiffs pray this Court enter joint and several judgment against the McCreery Defendants and the Prudential Defendants and enter either:

[1] an order for recission of the Property purchase, that all monies spent by Plaintiffs in performance of the contract and improving the Property be returned to them, and for all incidental and consequential damages incurred by Plaintiffs including, but not limited to, mortgage payments, real estate tax payments, homeowner's insurance payments, utility payments, and legal fees, among others; or

[2] a judgment for the difference in the value between the Property, as represented, and the actual value of the Property, and for payment of actual damages and expenses that will fairly and reasonably compensate Plaintiffs.

In addition to the relief request above, Plaintiffs pray for a judgment for attorney's fees allowable by statute, for punitive damages allowable by statute in an amount sufficient to punish Defendants and deter others from like conduct, for equitable relief as the Court deems necessary or proper, and for such other and further relief as the Court deems just and proper in the premises.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

66. For their separate cause of action against the Prudential Defendants, Plaintiffs re-allege and incorporate by reference COUNT I and COUNT II of Plaintiffs' Petition, as though the same were fully set forth herein.

67. The specific representations made on the Seller's Disclosure to Plaintiffs were both false and deliberately misrepresented the true condition of the Property.

68. Those false statements and deliberate misrepresentations and omissions were material because a reasonable person would rely on such representations in electing to purchase the Property.

69. The Prudential Defendants failed to exercise ordinary care to determine the accuracy of those representations prior to making them to Plaintiffs, particularly after they were informed by the Wagners, and upon information and belief, other individuals, that there were serious problems with the Property that would clearly affect the decision of Plaintiffs to purchase the Property.

70. The Prudential Defendants knew that these representations would be relied upon by Plaintiffs in deciding to purchase the Property.

71. Plaintiffs had no knowledge of the truth or falsity of the representations made by the McCreery Defendants and were in no position to determine the truth or falsity thereof prior to their purchase of the Property.

72. The Prudential Defendants were in a position to determine the truth or falsity of either the representations made by the McCreery Defendants, or the information supplied by the Wagners and, upon information and belief, other individuals.

73. The Prudential Defendants had a duty to determine the truth or falsity of those representations and either deliberately or negligently and carelessly failed and omitted to do so.

74. Plaintiffs did indeed rely upon those representations.

75. Plaintiffs were justified in relying upon the representations described in the Seller's Disclosure and communicated to them by the Prudential Defendants

because the listing agent and its other agents, servants, and employees had superior knowledge regarding the issue of the truth or falsity of those statements..

76. Had Plaintiffs been aware of the legal action, they would either have declined to purchase the Property or hired experts to fully investigate the claims made by the Wagners and reduce their offer to reflect the cost of identified repairs and an allowance for other undisclosed issues, as well as a reduction to reflect the cloud on the reputation of the Property. Had Plaintiffs been aware of the extent of the mold contamination, they would either have declined to purchase the Property or required a more extensive investigation and complete remediation.

77. Had Plaintiffs been aware of the ordinance violations, they would either have declined to purchase the Property or have required that the required structural analysis be performed by a registered professional and dangerous conditions and any other ordinance violations abated.

78. As a direct and proximate result of the misrepresentations communicated to them by the Prudential Defendants, Plaintiffs have been injured in that they spent money to purchase the Property that has a lesser actual value than represented, and have since been required to spend monies for emergency structural and plumbing repairs, and for incidental and consequential damages.

79. By engaging in such conduct, the Prudential Defendants showed a reckless indifference to or conscious disregard for the rights of Plaintiffs, such that exemplary damages are appropriate and thereby further entitle Plaintiffs to an award of exemplary damages.

WHEREFORE, Plaintiffs pray that the Court enter judgment against the Prudential Defendants and a judgment for the difference in value between the Property as represented and the actual value of the Property, and for payment of actual damages and expenses that will fairly and reasonably compensate Plaintiffs for consequential damages as set forth herein; for costs, for punitive damages in an amount sufficient to punish Prudential Defendants and deter others from like conduct, for equitable relief as the Court deems necessary and proper, and for such other and further relief as the Court deems just and proper in the premises.

## COUNT V
## RESCISSION

COME NOW PLAINTIFFS, and for their alternative cause of action against the McCreery Defendants, and state as follows:

80. Plaintiffs incorporate each and every allegation contained in COUNT I, COUNT II, and COUNT III, as though the same were fully set forth herein.

81. Plaintiffs have established each and every element of both fraud and misrepresentation.

82. To the extent that due to the conduct of the McCreery Defendants, Plaintiffs are unable to sell the Property without taking a huge hit in terms of the loss of their equity and remaining liable for the portion of the mortgage which is more likely than not, under water due to the deliberate misevaluation of the Property.

83. Upon information and belief Plaintiffs are unable to obtain financing or other types of further indebtedness to fund the potentially hundreds of thousands of dollars in repairs and rebuilding required to repair, restore, and render the Property

both habitable and up-to-code. Moreover, even if Plaintiffs were able to get some type of financing, it would destroy all or most of their equity that they brought to the purchase of the Property.

84. Therefore, under the totality of the circumstances, Plaintiffs have no adequate remedy at law and are entitled to full rescission and do hereby rescind the purchase of the Property.

85. Under the circumstances, to tender rescission to the McCreery Defendants, would have been a futile act and Plaintiffs are not required to engage in futile conduct to see rescission.

WHEREFORE, Plaintiffs pray judgment in rescission ordering the McCreery Defendants to take back the Property and to render Plaintiffs whole by returning them to their position prior to the purchase of the Property, including consequential damages such as, but not limited to, all Plaintiffs' mortgage payments, real estate tax payments, repair payments, consulting fees, insurance premiums, utility expenditures, and attorneys' fees, their costs in this behalf expended to make Plaintiffs whole, and for such other and further relief as the Court may deem just and proper in the premises.

Respectfully submitted,

THE DeVOTO LAW FIRM

    /s/ Thomas C. DeVoto
Thomas C. DeVoto   [#24773]
7646 Watson Road
St. Louis, MO 63119-5002
Telephone:   314 961 0330
FAX:   314 963 7754
E-mail:   tcd@devotolaw.com

ATTORNEY FOR PLAINTIFFS