UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Cause No: 4:15-CV01274-JAR<br>) |
| TIMOTHY A. MCCREERY and PAULA J. MCCREERY, | )<br>)<br>) |
| Defendants. | ) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Timothy and Paula McCreery purchased homeowners' policies which require that Plaintiff American Family Mutual Insurance Company defend a lawsuit against them. The Court should therefore deny Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

This is an insurance coverage dispute. Plaintiff American Family Mutual Insurance Company (American Family) seeks a declaration that it has no duty to defend or indemnify the underlying lawsuit against its insureds, Timothy and Paula McCreery (the McCreerys). Under Missouri law, American Family must defend the McCreerys if there are *any* allegations in the underlying petition which are covered by the policy. There are. For this reason, the Court should determine that American Family has a duty to defend the McCreerys.

1

## FACTS

In March 2012, the McCreerys sold their home on West Swon in Webster Groves (the Swon property) to David and Lisa Porthouse (collectively hereinafter "Porthouse").[1] In September 2013, Porthouse filed suit against the McCreerys (the first action).[2] In the first action, Porthouse claimed the McCreerys were liable for violations of the Missouri Merchandising Practices Act (MMPA) (Count I), violations of the federal Residential Lead-Based Paint Hazard Reduction Act (Count II), negligence per se (Count III), intentional misrepresentation (Count IV), and negligent misrepresentation (Count V).[3]

The McCreerys tendered the lawsuit to their insurer, American Family.[4] American Family agreed to provide a defense but only under a reservation of rights.[5] American Family then filed a Petition for Declaratory Judgment-Insurance Policy seeking a determination that it had no duty to defend or indemnify the first action.[6] On June 24, 2014, Porthouse dismissed their claims against the McCreerys without prejudice.[7]

---

[1] Exhibit A, Plaintiffs' Third Amended Petition, *David R. and Lisa K. Porthouse v. Timothy McCreery, et al.*, Cause No. 15SL-CC02126 currently pending in the Circuit Court of the County of St. Louis

[2] Exhibit B, Plaintiffs' First Petition, *David R. and Lisa K. Porthouse v. Timothy McCreery, et al.*, Cause No. 13SL-CC03257

[3] Exhibit B

[4] Exhibit C, Petition for Declaratory Judgment-Insurance Policy, *American Family Mutual Ins. Co. v. Timothy and Paula McCreery,* Cause No. 14SL-CC00231, Circuit Court of St. Louis County

[5] Exhibit D, correspondence from American Family dated November 12, 2013, and July 30, 2015.

[6] Exhibit C

[7] Exhibit E, Docket List, *David R. and Lisa K. Porthouse v. Timothy McCreery, et al.*, Cause No. 13SL-CC03257

In June 2015, Porthouse re-filed their claims against the McCreerys.[8] Porthouse asserted essentially the same claims: violations of the MMPA, misrepresentation, negligence per se, negligent misrepresentation, and rescission.[9] Porthouse subsequently amended their petition several times.[10] The most recent iteration of the Porthouse claims is reflected in the Third Amended Petition.[11] In that petition, Porthouse states claims against the McCreerys for violations of the MMPA (Count I), intentional and fraudulent misrepresentation (Count II), an alternative or additional cause of action for fraud and intentional misrepresentation (Count III), rescission (Count V), and the alternative cause of action for negligence (the underlying action).[12]

In response, American Family filed this declaratory judgment action seeking to extricate itself from the duty to defend the underlying action. American Family now seeks judgment as a matter of law declaring that it has no duty to defend or indemnify the underlying action.

## I.    Summary judgment standard

In accordance with Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court demonstrates that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). When ruling on a motion for summary judgment, the court is to construe all facts and make all reasonable inferences in favor of the nonmoving party. *Spritas Co. v.*

---

[8] Exhibit F, Petition, *David R. and Lisa Porthouse v. Timothy McCreery, et al.*, Cause No. 15SL-CC02126, Circuit Court of St. Louis County
[9] *Id*.
[10] Exhibit G, Docket list, *David R. and Lisa Porthouse v. Timothy McCreery, et al.*, Cause No. 15SL-CC02126
[11] Exhibit A
[12] Exhibit A. In Count IV, Porthouse asserts an action for negligent misrepresentation against the co-defendants, Prudential Alliance Realtors and Michael Niemann as the personal representative of the Estate of Tina Niemann. Tina Niemann and Prudential were the McCreerys' agent in the sale of the Swon property to Porthouse.

*Nautilus Ins. Co.,* 715 F.3d 667, 670 (8th Cir. 2013). "Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court. *Chicago Ins. Co. v. City of Council Bluffs,* 713 F.3d 963, 969 (8th Cir. 2013)(citation omitted).

The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 908 (8th Cir. 2007). The parties agree that Missouri law applies to the resolution of this coverage dispute.

## II.     Analysis

The issue for this Court is simple and straightforward:  Does American Family have a duty to defend the McCreerys in the underlying action?

Under Missouri law, an insurer has two distinct duties: the duty to indemnify the insured for covered losses, and the duty to defend the insured in any lawsuit seeking damages that would be covered losses. *Trainwreck W., Inc. v. Burlington Ins. Co.,* 235 S.W.3d 33, 44 (Mo. Ct. App. 2007)(citations omitted).

The duty to defend is triggered when "the insured is exposed to *potential* liability to pay" no matter how unlikely it is that the insured will be found liable. *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005)(emphasis in original). The duty to defend is broader than the duty to indemnify. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). So to extricate itself from the duty to defend, the insurer must prove there is **no possibility** of coverage. *Prairie Framing*, 162 S.W.3d at 79 (emphasis in original)(citation omitted).

The court determines coverage by comparing the language of the insurance policy with the allegations in the pleadings. *Id*. But coverage is not necessarily circumscribed by the allegations

4

of the petition. Instead, even if the pleadings do not show coverage, where known or ascertainable facts become available which establish coverage, then the insurer has a duty to defend. *Id*. (citation omitted).

While arguably not all allegations of the Third Amended Petition (the petition) may be covered under the American Family policies, that is not the test for the duty to defend. Instead, American Family's duty to defend potentially insured claims arises even though claims beyond coverage may be included. *Id*. (citation omitted). There are allegations which trigger American Family's duty to defend. And none of the exclusions cited by American Family operate to relieve it of that duty.

### A.   The Swon policy provides coverage for certain claims.

American Family issued Missouri Homeowners Policy-Gold Star Special Deluxe Form, policy number 24-PW6352-01, for the Swon property with effective dates of 10-30-2012 to 03-19-2013, (the policy). With that policy American Family promised the following:

**COVERAGE D – PERSONAL LIABILITY COVERAGE**

We will pay, up to our limit, compensatory damages for which any insured is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.[13]

So the policy provides personal liability coverage for claims which result from property damage caused by an occurrence. The petition includes such claims.

The petition sets out the various Porthouse complaints in 83 paragraphs grouped together under six counts, most of which are identified as some type of "misrepresentation."[14] But just as

---

[13] All references to the language of the Swon policy are from the policy identified as Plaintiff's Exhibit 1.
[14] The McCreerys categorically deny the Plaintiffs' claims. They have gathered evidence and adduced expert testimony which they are confident will defeat these claims.

a book is more than the titles of its chapters, a petition is more than the legal theories the plaintiff assigns to his claims. Missouri courts do not evaluate a petition to determine coverage based solely on how plaintiff's counsel titled the claims. Instead, the Court must determine coverage from the allegations contained in the petition:

> Our interpretation of the test for determining an insurer's duty to defend under Missouri law suggests that as long as the petition demonstrates the potential or possible statement of a claim within insurance coverage, *even if inartfully drafted*, it triggers the insurer's duty to defend.
>
> *Prairie Framing*, 162 S.W.3d at 83 (emphasis added).

Under the terms of the policy, American Family has a duty to defend if there is any potential for a claim against the McCreerys for property damage caused by an occurrence. "Property damage" is defined by the policy as "physical damage to or destruction of tangible property, including loss of use of the property." And under Missouri law, an accident that constitutes an "occurrence" includes negligence and negligent misrepresentation:

> It is well-settled Missouri law that when a 'liability policy defines occurrence as meaning accident Missouri courts consider this to mean injury caused by the negligence of the insured.'….Moreover, negligent misrepresentation, like other forms of negligence, falls within the meaning of accident and therefore, constitutes an "occurrence" when the insured neither expected nor intended the event.
>
> *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 393 (Mo. Ct. App. 2007) (citations omitted).

Consider the following allegations in the context of Missouri coverage law:

24. On or about April 13, 2013, the dining room ceiling began to collapse into the room below. This revealed undisclosed structural damage and previous attempted repairs to the joists supporting the floor above, the wall above that floor, the floor above that floor, and ultimately, the roof of the house.

46. At some point during the period that the McCreery Defendants owned the Property, they received a permit to renovate one or more bathrooms on the second floor of the property.

6

51. In the course of his renovations, Timothy McCreery decided to remove structural elements of the floor, including a concrete slab that had provided rigidity to the floor joints and to the ceiling below. He cut into existing floor joists in order to make room for new or relocated sewage pipes.

52. Timothy McCreery attempted to remedy the issues he created by adding patches to a portion of the sides of the existing weakened joists. He cut and removed a gas supply line without capping the line. He disconnected existing electrical wiring and reconnected it with electrical tape without making the connection in an approved electrical box.

53. The structural, gas plumbing, and electrical modifications Timothy McCreery made did not comply with the then-current building code.[15]

Porthouse alleges that the McCreerys renovated the bathroom area above the dining room. They claim those modifications were unsafe and failed to comply with the relevant building codes. Porthouse also alleges that after they bought the house, the dining room ceiling began to collapse into the room below as a result of the allegedly negligent renovations.

These are allegations of "property damage" as that term is defined by the policy; i.e., physical damage to tangible property, including the loss of use of that property. And as defined under Missouri law, the property damage which resulted from the insured's alleged negligence, was caused by an "occurrence." There are no allegations that the renovations were performed to deliberately create a structural problem. So these allegations—which establish that the McCreerys are exposed to *potential* liability covered under the policy—trigger American Family's duty to defend the entire case. *Prairie Framing*, 162 S.W.3d at 79.

In addition, under Missouri law, facts which are known or ascertainable must also be assessed in determining coverage. *Id.* Just such information was available to American Family. In their answers to interrogatories, Porthouse indicated that the ceiling between the dining room

---

[15] Exhibit A

7

and both baths collapsed as a result of structural defects on the second floor.[16] And when asked about the allegation that the ceiling collapse revealed attempted repairs to the joists, wall, floors and roof, Porthouse responded that, "The McCreery Defendants [sic] attempt at repairing was actually faulty installation of bathroom floor, fixtures, plumbing lines."[17] And in response to a question about the structural changes to the bathrooms, Porthouse responded that the McCreerys "Replaced/cut floor joists; replumbed improperly capped gas/sewer lines; replaced floor; destroyed structural integrity of floor/ceiling."[18] Porthouse also claimed that "Upon information and belief, the McCreery Defendants removed the concrete subfloor in the hall and the full bathroom."[19]

These are facts that American Family knew or could have ascertained from a reasonable investigation, and are potentially within the scope of the policy's coverage. *See Prairie Framing*, 162 S.W.3d at 79 (if the allegations and the facts that the insurer knew or could have ascertained from a reasonable investigation are potentially within the policy's coverage, then the insurer wrongfully refused to defend its insured).

American Family does not address these allegations or the available facts. Instead, the insurer focuses solely on the Plaintiffs' named theories, and contends that there is no coverage because the McCreerys' alleged misrepresentations occurred during the Swon policy period and because they did not cause any property damage. But American Family's reliance on *Lippincott* and *Wyllie* is misplaced because of the key distinctions with the facts of this case.

---

[16] Exhibit H, Plaintiffs' Answers to Interrogatories, no. 19
[17] *Id*. at no. 28
[18] *Id*. at no. 35
[19] *Id.* at no. 36

8

In *St. Paul Fire & Marine Ins. Co. v. Lippincott*, the Thompsons filed suit against the Lippincotts for fraud and rescission claiming the Lippincotts concealed structural damage to the house they sold to the Thompsons. 287 F.3d 703, 704 (8th Cir. 2002). The court held there was no coverage for the Thompsons' claims because the Lippincotts' negligent misrepresentations did not cause any property damage to the house. *Id.* at 706. Nor did their actions to conceal cracks cause any property damage. *Id.*

Unlike in *Lippincott*, Porthouse is alleging first and foremost that the McCreerys were negligent in renovating and repairing certain areas of the house. In other words, the ceiling collapsed because the McCreerys allegedly did a poor job renovating the bathroom above the dining room. The McCreerys' misrepresentations did not cause the ceiling to collapse, but the McCreerys' allegedly poor workmanship did. And that claim falls within the policy's coverage.

The same distinction applies in *Hartford Ins. Co. v. Wyllie*, 396 F. Supp. 2d 1033 (E.D. Mo. 2005). In *Wyllie*, the plaintiffs sued Wyllie for breach of contract and fraud in connection with the sale of Wyllie's condominium to them. *Id.* at 1034. As in *Lippincott*, the court held there was no coverage because no property damage occurred as a result of Wyllie's statements about the condominium. In this case, Porthouse is claiming that damage occurred as a result of the McCreerys' actions in renovating the bathroom—not as a result of their alleged misrepresentations.

In *Wood v. Safeco Ins. Co. of America*, the court addressed a similar set of facts, and the court's analysis should direct the outcome here. 980 S.W.2d 43 (Mo. Ct. App. 1998). In *Wood*, the insured sold real estate to another (Buyer). *Id.* at 45. After the sale, the property flooded twice. *Id.* As a result, Buyer sued the insured for alleged misrepresentations regarding the flooding of the property. *Id.* As in this case, the insurer argued there was no coverage for the Buyer's claims

9

because the claims were not "occurrences." *Id*. The court was asked to decide whether a liability policy which restricts coverage to an "occurrence" encompasses a negligence claim. *Id*. at 49. The court held that where a policy defines an "occurrence" as an "accident" there is coverage for negligent misrepresentation claims:

> Missouri authority would allow negligent conduct to be encompassed by a liability policy providing coverage for an "occurrence" as an "accident." This comports with a reasonable person's expectation of liability coverage. A 'liability policy is designed to protect the insured from fortuitous injury caused by his actions. If the injury occurs because of carelessness of the insured, he reasonably expects the injury to be covered.'

*Id.*, at 50.

The court noted that, as in this case, the damage occurred after the sale of the home. *Id*. at 53. Importantly, the court held that whether the flooding damage was causally related to the misrepresentations should have been pursued by the insurer on behalf of the insured in the Buyer's litigation *rather than against the insured in the coverage litigation*. *Id*. (emphasis added).

In this case, unlike in *Lippincott* and *Wyllie, supra,* Porthouse is suing the McCreerys for more than misrepresentation. Porthouse also alleges that the McCreerys are liable for poor renovation workmanship. And Porthouse claims that, after the sale, those renovations caused the dining room ceiling to collapse. Since Porthouse's injury was caused by the McCreerys' alleged negligence, the McCreerys reasonably and rightfully expect that injury to be covered.

### B. The exclusions do not apply to relieve American Family of its duty to defend.

The McCreerys have satisfied their burden to prove coverage. It is American Family's burden to prove that the exclusions operate to bar that coverage:

> Provisions restricting coverage are construed in favor of the insured and against the insurer, who has the burden of clearly and unambiguously expressing its intent to exclude.

10

*Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 756 F. Supp. 1232, 1238 (E.D. Mo. 1991).

This is the law because "An insured purchases coverage for protection, and the policy will be interpreted to grant coverage rather than defeat it. *Prairie Framing,* 162 S.W.3d at 86 (citation omitted). Missouri courts "strictly construe exclusion clauses against an insurer." *Id.*

### 1. Property Owned or Controlled exclusion

American Family contends that the Property Owned or Controlled exclusion operates to bar coverage. Under that provision, there is no coverage for damage to property owned by any insured. American Family argues that the "defects" were present and the McCreerys' alleged misrepresentations occurred while the McCreerys owned the property. For this reason, says American Family, there was no covered "property damage." In making this argument, however, American Family focuses on the misrepresentation allegations and ignores the Porthouse claims for negligent construction. For this reason, American Family's reliance on *Ballew* and *Payne* is unavailing.

In *Shelter Mut. Ins. Co. v. Ballew*, the court held that the defects existed in the home prior to the sale, i.e., while the insured still owned the property. 203 S.W.3d 789, 793 (Mo. Ct. App. 2006). The type of negligence being claimed—negligent misrepresentation—occurred while the insured owned the property. But those are not the facts here. In this case, the property damage in the form of a collapsed ceiling occurred when Porthouse owned the property. The negligence which caused that damage was not a misrepresentation but rather the McCreerys' allegedly faulty renovation work.

Similarly, in *Payne v. Grinnell Mut. Reinsurance Co.*, the court held that the policy provided coverage only for property damage *caused* by the occurrence. 716 F.3d 487, 490 (8th Cir. 2013)(emphasis in original). Citing its decision in *Lippincott, supra*, the court affirmed its

11

position that there is no "property damage" unless and until the occurrence causes "physical damage to tangible property." *Id.*  In this case, the occurrence—the allegedly negligent renovations—caused physical damage to tangible property, i.e. a ceiling collapse, when Porthouse owned the property, not the McCreerys.  For this reason, the Property Owned and Controlled exclusion does not apply to bar coverage.

Although not cited by American Family, the policy also includes the following exclusion for both Coverage D – Personal Liability and Coverage E – Medical Expense:

> **14.        Premises Owned, Rented or Controlled. We** will not cover
> **bodily injury** or **property damage** arising out of any act or
> omission occurring on or in connection with any premises owned,
> rented, or controlled by any **insured** *other than an **insured premises***.
> (emphasis added)

Under the policy, both the Property Owned or Controlled exclusion and the Premises Owned, Rented or Controlled exclusion apply to Coverage D – Personal Liability.  American Family relies on the Property Owned or Controlled exclusion to make the case that there is no coverage because the McCreerys owned the Swon property.

But the Premises Owned, Rented or Controlled exclusion provides otherwise.  This exclusion bars coverage for property damage arising out of any act or omission occurring on or in connection with any premises owned.  But the exclusion carves out coverage for the Porthouse claims because it applies to any premises the insured owns, **except the insured premises.**  There is no dispute that the insured premises was the West Swon property.

As a result, the two exclusions read together create an ambiguity.  Under the Premises Owned, Rented or Controlled exclusion, the policy *gives* coverage for property damage claims which arise out of an act or omission of the insured occurring on or in connection with the insured premises.  But then the policy takes away that same coverage with the Property Owned or

12

Controlled exclusion. Under well-established Missouri law, this creates an ambiguity that must be resolved in the insured's favor:

> Conflicts and inconsistencies between different policy provisions, with one seeming to deny coverage but the other seeming to grant it, will render a policy ambiguous, and such an ambiguity will be interpreted in favor of the insured.

*Manner v. Schiermeier*, 393 S.W.3d 58, 65 (Mo. 2013)(citation omitted).

The ordinary person of average understanding could reasonably conclude that he was paying a premium for insurance which covered claims related to the insured property. So, even assuming the Property Owned or Controlled exclusion applies to take away coverage, the Premises Owned, Rented or Controlled exclusion gives back that coverage for the insured premises. This ambiguity must be resolved in favor of the McCreerys.

### 2. Contractual Liability

American Family argues that the Porthouse claims arise out of the contract to purchase the Swon property, and are therefore barred from coverage under the Contractual Liability exclusion which bars coverage for "personal liability under any contract or agreement."

But there was no contract between Porthouse and the McCreerys for the home renovations at issue. Porthouse is claiming that the ceiling in their dining room collapsed because the McCreerys did not properly renovate the areas on the floor above. These particular allegations have nothing to do with the sale of the home. For example, if Porthouse had hired a contractor to do the bathroom renovations, and their ceiling had collapsed, they would have had a claim against that contractor—whether or not the home was being bought or sold. The same is true in this case. The claims of property damage related to the collapsed ceiling did not arise out of the sale contract. As a result, this exclusion does not operate to bar coverage.

### 3. Intentional Conduct/Mold

American Family correctly notes that the policy excludes coverage for property damage caused intentionally by the insured and for damages due to mold.  It is not, however, necessary to address either of these exclusion as they do not apply to the allegations which trigger the duty to defend.  Porthouse does not allege that the McCreerys deliberately failed to properly renovate the areas above the dining room.  And not all the damages, e.g. the collapsed ceiling, were caused by exposure to mold.

### C.     The Squires policy provides coverage for certain claims.

American Family issued Missouri Homeowners Policy-Gold Star Special Deluxe Form, policy number 24-BU5741-01 for the Squires property[20] with effective dates of 12-28-2012 to 12-28-2013.

American Family contends that there is no coverage for the claims against the McCreerys under the Squires policy because the McCreerys sold the Swon property on March 19, 2012.  As a result, the Swon property was not the "insured premises" under the Squires policy.  But American Family does not deny that the McCreerys are the named insured on the Squires policy.  Instead, American Family cites the policy definitions it believes are relevant.  It does not, however, direct the court to the policy language which requires that the claim be related only to damage on the insured premises.  Nor do they cite any authority which supports their interpretation of the Squires policy.

First, it is necessary to consider the chronology and policy effective dates for both policies.  The Swon policy was in effect from **10-30-2012** to **03-19-13**.  The Squires policy was in effect from **12-21-2012** to **12-28-2013**.  The affidavit attached to each policy indicates that each was in

---

[20] The McCreerys next home was located at 18 Squires Lane. (Exhibit 2)

14

effect on **March 18, 2013**. So according to the evidence submitted by American Family, the McCreerys carried insurance on the Swon property for a full year after the sale. And both policies were in effect from **12-28-2012** to **03-18-2013.**

Porthouse alleges that the negligent renovations occurred before the sale of the house in **March 2012** when the Swon policy was in effect. But the resulting damage occurred on **April 13, 2013**, when the Squires policy was in effect.

The terms of the Squires policy do not support American Family's argument. In Section II-Liability Coverages/Coverage D – Personal Liability Coverage, American Family agreed to pay compensatory damages to which an *insured* is legally liable because of bodily injury or property damage caused by an occurrence. As with the Swon policy, "property damage" in the Squires policy is simply physical damage to or destruction of tangible property. And an "occurrence" is an accident which results *during the policy period* in bodily injury or property damage.

The insuring language references an "insured" not an "insured premises." And neither the property damage nor the occurrence definition limits the coverage to the insured premises. Instead, the coverage is for personal liability for negligence which results in property damage during the policy period. According to the petition, the McCreerys were negligent. The collapsed ceiling in the dining room resulted from that alleged negligence. The damage occurred during the policy period for the Squires policy. Under the unambiguous terms of the policy, there is personal liability coverage for the McCreerys for this claim. And that potential for coverage triggers American Family's duty to defend the underlying action.

The facts of this case closely resemble those of *Shaver v. Ins. Co. of North America* such that the court's analysis should direct the outcome in this case. 817 S.W.2d 654 (Mo. Ct. App. 1991). The plaintiff Shaver claimed that he was injured as a result of the insured's negligence in

constructing an air shaft in a bank building. *Id*. at 655.  In *Shaver*, like in this case, there were two successive policies at issue. *Id*.  Both policies provided the same liability coverage. *Id*.  And both defined the "bodily injury" and "occurrence" terms the same. *Id.*  In deciding which policy provided coverage, the court focused on the definition of a "bodily injury" as a bodily injury, sickness or disease *which occurs during the policy period*. *Id*. at 657.  The court held that the phrase "which occurs during the policy period" is unambiguous. *Id*.  And the court reiterated Missouri law on the time when an accident "occurs":

> It is well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time *when the complaining party was actually damaged*.
>
> *Id*. (emphasis in original)(citation omitted).

In this case, as American Family notes, the two policies are essentially the same.  The alleged wrongful conduct in renovating the bathroom was committed during the Swon policy period.  But the *actual damage*—the collapsed ceiling—occurred during the Squires policy.  As a result, American Family has a duty to defend under the Squires policy.

American Family does not cite or direct the Court to any of the exclusions in the Squires policy which it claims bar coverage for the underlying action.  But none of the exclusions referenced in the Swon policy would apply to bar coverage under the Squires policy.  American Family admits that the McCreerys did not own the Swon property, so the Property Owned or Controlled exclusion is not relevant much less applicable.

The same is true of the Premises Owned, Rented or Controlled exclusion.  This exclusion bars coverage for property damage which arises out of any act or omission occurring on or in connection with any property owned or controlled by the insured.  The property damage which

16

allegedly resulted from the McCreerys' acts or omissions occurred when the McCreerys no longer owned or controlled the Swon property.

As discussed above, the mold, intentional conduct, and contractual liability exclusions do not apply to the collapsed ceiling claim. As a result, American Family cannot satisfy its burden of proof as to the exclusions.

> **D.    The Swon and Squires policies do not operate in conjunction to bar coverage under both policies.**

American Family utilizes conflicting theories in order to deny coverage under both policies. On the one hand, American Family argues that the Swon policy does not provide coverage because the negligent construction occurred on the property while the McCreerys still owned it—even though the property damage occurred *after* the sale of the home.

But then American Family asserts that the Squires policy does not provide coverage because the McCreerys did *not* own the property. So the negligence occurred while the McCreerys owned the property, but Porthouse suffered the damages after the sale. And yet neither policy provides coverage?

The allegations and available evidence establish that Porthouse is holding the McCreerys liable for property damage caused by an occurrence which resulted during the policy period, as those terms are defined by the Squires policy. To the extent any damage occurred before the Squires policy was in effect, that damage would be covered under the Swon policy.

American Family fails to cite any authority which allows it to interpret these policies such that there is no coverage under *either* policy. Under American Family's line of reasoning, the McCreerys paid premiums for personal liability coverage under two different policies but neither policy provides coverage for the underlying action. Not surprisingly, American Family makes no

attempt to argue that it was unreasonable for the McCreerys to have expected personal liability coverage under at least one of the policies.

### E. The duty to indemnify cannot be determined prior to a resolution in the underlying action.

The Porthouse claims are no more than that—just claims. The Court cannot determine coverage for a judgment or settlement that does not yet exist. And courts do not issue advisory opinions. *Greenman v. Jessen*, 787 F.3d 882, 891 (8th Cir. 2015)(federal court does not have power to render advisory opinions).

"The issue of indemnification must await final resolution in court." *Prairie Framing*, 162 S.W.3d at 80.

## CONCLUSION

The McCreerys purchased homeowners' insurance which provides personal liability coverage for claims of property damage caused by an occurrence. Under Missouri law, negligence and negligent misrepresentation fit the definition of an "occurrence."

The plaintiffs in the underlying action allege that the McCreerys were negligent in renovating the bathroom. And they claim that as a result of that negligence, the dining room ceiling collapsed. These allegations trigger a duty on the part of American Family to defend the McCreerys in the Porthouse lawsuit.

This Court should therefore deny American Family's motion for summary judgment, and declare that American Family has a duty to defend the underlying action against the McCreerys.

        Respectfully submitted,

        /s/   M. Adina Johnson
        R.C. Wuestling, #30773MO
        M. Adina Johnson, #47683MO
        Attorneys for Defendants Timothy A. McCreery
        and Paula J. McCreery
        Wuestling & James, L.C.
        720 Olive St., Suite 2720
        St. Louis, MO  63101
        Phone:  (314) 421-6500
        Fax:  (314) 421-5556
        E-mail:  wuestling@wuestlingandjames.com
                johnson@wuestlingandjames.com

## CERTIFICATE OF SERVICE

    I hereby certify that on October 17, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

    Robert J. Wulff [rjwulff@evans-dixon.com]
    Sean P. Dolan [sdolan@evans-dixon.com]
    *Attorneys for Plaintiff*

        */s/ M. Adina Johnson*